1

2

3

4

5

6

7

8                            IN THE UNITED STATES DISTRICT COURT

9                          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11    BERNAVE ALCARAZ, et al.,                    No. C-13-511 MMC

12                 Plaintiffs,                     **ORDER GRANTING IN PART AND
                                                   DENYING IN PART UNITED STATES'**
13       v.                                        **MOTION TO DISMISS; AFFORDING
                                                   PLAINTIFFS LEAVE TO FILE SECOND**
14    UNITED STATES, et al.,                       **AMENDED COMPLAINT**

15                 Defendants.
      _____/

16

17          Before the Court is defendant United States' motion to dismiss, filed July 2, 2013, by

18    which the United States seeks dismissal of plaintiffs' First Amended Complaint ("FAC").

19    Plaintiffs have filed opposition, to which the United States has replied.  Having read and

20    considered the papers filed in support of and in opposition to the motion, the Court rules as

21    follows.[1]

22                                      **BACKGROUND**

23          Plaintiffs Bernave Alcaraz ("Bernave") and Maria Alcaraz ("Maria"), who are husband

24    and wife, bring the above-titled action on behalf of themselves and their three minor

25    children.  The following factual allegations, set forth in the FAC, are assumed true for

26    purposes of the instant motion.

27          Bernave, a United States citizen, filed with the United States Citizenship and

28    _____

                         [1]By order filed August 26, 2013, the Court took the matter under submission.

*United States District Court*

*For the Northern District of California*

Immigration Service an "immigration petition" on behalf of Maria (<u>see</u> FAC ¶¶ 9, 20), and, in conjunction therewith, Maria filed an "application to adjust her status" (<u>see</u> FAC ¶ 20).  The petition and application were denied in August 2009.  (<u>See</u> FAC ¶ 22.)  Thereafter, "the government set in motion a process whereby Maria's case would be reviewed by an immigration judge ('IJ')" (<u>see</u> FAC ¶ 22), and, in conjunction therewith, mailed to Maria in December 2009 a "notice of her hearing before the IJ" (<u>see</u> FAC ¶ 24).

Earlier, in July 2009, Maria had "notified the government of her change of address." (<u>See</u> FAC ¶ 23.)  The "government," however, sent the notice of the removal hearing to Maria's "old address," and Maria did not receive it.  (<u>See</u> FAC ¶¶ 25, 26.)  "When Maria failed to appear at her hearing, the IJ ordered her removed in June 2010."  (FAC ¶ 27.)  On June 8, 2011, two Immigration and Customs Enforcement ("ICE") officers "took [Maria] into custody" at her home.  (<u>See</u> FAC ¶¶ 29, 35.)  Maria arrived at a "holding facility in or around San Diego" either late that evening or very early on June 9, 2011.  (<u>See</u> FAC ¶¶ 51, 53.)  On the morning of June 9, 2011, Maria was transported to Mexico.  (<u>See</u> FAC ¶ 54, 55, 58.)

Meanwhile, on June 9, 2011 at 8:15 a.m., Bernave, through counsel, filed at "120 Montgomery"[2] a "motion to reopen" Maria's removal proceedings.  (<u>See</u> FAC ¶ 50.)   The Department of Homeland Security did not oppose the motion to reopen, and, on June 30, 2011, the IJ reopened the case.  (<u>See</u> FAC ¶ 59.)  Maria subsequently reentered the United States "pursuant to ICE's grant of parole."  (<u>See</u> FAC ¶ 65.)[3]

//

//

//

//

---

[2]The San Francisco Immigration Court is located at 120 Montgomery Street, San Francisco, California.

[3]According to the United States, the "next scheduled event in [Maria's] immigration case is a February 10, 2016, hearing concerning the removal charges, including cancellation of removal and adjustment of status."  (<u>See</u> Meyer Decl. ¶ 4.)

**DISCUSSION**

In their complaint, plaintiffs allege nine causes of action, seven of which are alleged against the United States.[4]  The United States seeks dismissal of each of said seven causes of action, which the Court next considers in turn.

**A.  First Claim for Relief (False Arrest and Imprisonment)**

In the First Claim for Relief, brought pursuant to the Federal Tort Claims Act ("FTCA"), plaintiffs allege that "defendants falsely arrested and imprisoned Maria without legal justification or privilege."  (See FAC ¶ 75.)  In its motion to dismiss, the United States argues the First Claim for Relief is subject to dismissal in its entirety for several reasons.  In response, plaintiffs "concede that the arrest was based upon a facially valid order of removal" and thus "withdraw the claim."  (See Pls.' Opp. at 7:3-5.)  Plaintiffs also "concede the same with regard to their claim for false imprisonment in connection with all related imprisonments up until the time her stay went into effect."  (See id. at 7:6-8.)

With respect to the portion of the claim plaintiffs have not withdrawn, plaintiffs take the position that the removal order was automatically stayed when the motion to reopen was filed, and, consequently, that the United States "was without legal authority to take Maria to Mexico," which removal, plaintiffs assert, occurred after the motion to reopen was filed.  (See id. at 7:6-9.)  Specifically, plaintiffs rely on 8 U.S.C. § 1229(b)(5)(C), which provides that when an alien files a motion to reopen removal proceedings based on a claim that the alien "did not receive notice" of the removal proceedings, "[t]he filing of the motion to reopen . . . shall stay the removal of the alien pending disposition of the motion by the immigration judge."  See 8 U.S.C. § 1229(b)(5)(C).

The Court finds the First Claim for Relief, as limited by plaintiffs, is subject to dismissal for lack of subject matter jurisdiction.  In particular, as the United States argues, the claim is barred by 8 U.S.C. § 1252(g), which provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision

---

[4]The other two causes of action are alleged against individual federal officers, who are named in the FAC as "Doe" defendants.

1    or action by the Attorney General to commence proceedings, adjudicate cases, or execute

2    removal orders against any alien."  <u>See</u> 8 U.S.C. § 1252(g).  The First Claim for Relief is a

3    claim that the removal order should not have been executed in light of the stay.  Such claim

4    plainly arises from the decision to execute the June 2010 removal order, and,

5    consequently, is not a claim over which the Court has jurisdiction.  <u>See</u> <u>Foster v. Townsley</u>,

6    243 F.3d 210, 213-15 (5th Cir. 2001) (holding district court lacked jurisdiction to consider

7    damages claim based on United States' removal of alien during period in which order of

8    removal had been stayed); <u>see also</u> <u>Sissoko v. Rocha</u>, 509 F.3d 947, 948-49 (9th Cir.

9    2007) (holding district court lacked jurisdiction to consider damages claim where plaintiff

10   alleged "false arrest" based on alien's detention, where "detention arose from [government

11   agent's] decision to commence expedited removal proceedings").

12        Accordingly, to the extent plaintiffs have not voluntarily withdrawn the First Claim for

13   Relief, such claim is subject to dismissal for lack of subject matter jurisdiction, and without

14   leave to amend.

15   **B. Second Claim for Relief (Assault) and Third Claim for Relief (Battery)**

16        The Second Claim for Relief, alleging "assault," and the Third Claim for Relief,

17   alleging "battery," are based on the following three allegations:  (1) while Maria was being

18   detained at an ICE facility, ICE officers "forcibly took her fingers to put a finger print on

19   certain papers against her will" (<u>see</u> FAC ¶ 41); (2) on the morning of June 9, 2011, Maria

20   was "handcuffed and shackled" (apparently in preparation for her transport to Mexico), and,

21   after she told an officer the "handcuffs were too tight," the officer "responded by tightening

22   the handcuffs" (<u>see</u> FAC ¶ 54); and (3) after Maria, in handcuffs and shackles, had been

23   placed in a "van" with other female detainees and seated on a steel bench without "seat

24   belts or any sort of restraint," the "driver and his companion" then "alternatively accelerated

25   and slammed on the brakes causing the women to slide off of the bench and to be

26   slammed against the walls of the van," and "laugh[ed]" while engaging in such driving

27   activities" (<u>see</u> FAC ¶ 56).

28   //

1    As discussed below, the Court finds the assault and battery claims are subject to

2 dismissal to the extent they are based on fingerprinting, but not otherwise subject to

3 dismissal at the pleading stage.

4    **1. Fingerprinting**

5    As noted, plaintiffs allege Maria was "forcibly" fingerprinted.  (See FAC ¶ 41.)  The

6 United States argues such allegation is insufficient to state a claim for assault or battery.

7 The Court agrees.

8    Plaintiffs do not allege, nor could they allege, that Maria had a right not to be

9 fingerprinted.  Further, plaintiffs' conclusory reference to the fingerprinting being "forcible" is

10 insufficient to state a claim that Maria was assaulted or battered.  See Ashcroft v. Iqbal,

11 556 U.S. 662, 678 (2009) (holding courts are "not bound to accept as true a legal

12 conclusion couched as a factual allegation") (internal quotation and citation omitted).

13 Indeed, as one district court has observed, in the context of addressing a claim of

14 excessive force, "[s]imply alleging that an officer caused [p]laintiff to press her fingers too

15 forcefully during [the] fingerprinting process cannot suffice for pleading an excessive force

16 claim, particularly since deliberate pressure is inherently necessary to secure adequate

17 fingerprints."  See Buzayan v. City of Davis, 2008 WL 4468627, *3 (E.D. Cal. 2008).

18    The Court, however, will afford plaintiffs leave to amend their assault and battery

19 claims in the event plaintiffs can allege sufficient facts, as opposed to legal conclusions, to

20 support a finding that the manner in which Maria was fingerprinted constituted an assault

21 and battery.

22    **2. Tightening of Handcuffs**

23    With respect to the claim that an officer tightened Maria's handcuffs after she stated

24 they were too tight, the United States argues the claim is barred by § 1252(g), which, as

25 noted above, bars claims arising from a decision to execute an order of removal.  The

26 Court disagrees.  Claims by aliens alleging "mistreatment" during detention pending

27 removal "bear no more than a remote relationship to the Attorney General's decision to

28 'execute [an alien's] removal order,' and, consequently, are not barred by § 1252(g).  See

1 | Humphries v. Various Federal USINS Employees, 164 F.3d 936, 944 (5th Cir. 1999)

2 | (quoting 8 U.S.C. § 1252(g)).

3 |      The United States further argues the claim is barred by the "discretionary function"

4 | exception to the FTCA, which exception bars claims "based upon the exercise or

5 | performance or the failure to perform a discretionary function or duty on the part of a

6 | federal . . . employee."  See 28 U.S.C. § 2680(a).  To establish such exception, the United

7 | States bears the "burden" of demonstrating the challenged discretionary act involved

8 | "judgment . . . of the kind that the discretionary function exception was designed to shield,

9 | namely only governmental actions and decisions based on considerations of public policy."

10 | See Terbush v. United States, 516 F.3d 1125, 1129, 1134 (9th Cir. 2008).  Here, the Court

11 | cannot conclude, from the factual allegations in the FAC, that the officer's response to

12 | Maria's complaint about tight handcuffs, i.e., by further tightening the handcuffs, was a

13 | decision "based on considerations of public policy," and, consequently, finds the United

14 | States has failed to show at the pleading stage the discretionary function exception

15 | applies.

16 |      **3.  Manner of Driving**

17 |      The remaining conduct on which plaintiffs base their assault and battery claims is

18 | the manner in which the van was driven from San Diego to Mexico, specifically, the driver's

19 | rapid acceleration and deceleration, knowing the detainees were handcuffed, shackled, and

20 | not restrained by seat belts.

21 |      The United States argues such claim is barred by the discretionary function

22 | exception.  As with the question of handcuffs, resolution of such issue is premature at the

23 | pleading stage, as the factual allegations in the FAC do not suggest the above-referenced

24 | driving decisions were "based on considerations of public policy."  See id. at 1129.

25 |      The United States further argues plaintiffs fail to state a claim for assault or battery

26 | for the asserted reason that the "transport of [Maria] in a van without a seatbelt to Mexico

27 | does not amount to assault and battery."  (See Def.'s Mot. at 32:25-26.)  Plaintiffs' assault

28 | and battery claims, however, are not based on the mere lack of seatbelts, but, rather, on

1    the allegation that the officers drove in a manner seemingly designed to cause Maria to be

2    forcefully thrown against the walls of the van.

3    **C. Fourth Claim for Relief (Negligence)**

4         Although plaintiffs' negligence claim, as alleged in the FAC, is broadly pleaded (see

5    FAC ¶¶ 83, 85-89), the scope of the claim, as clarified in plaintiffs' opposition (see Pls.'

6    Opp. at 8:18 - 9:2), is now limited to the following four alleged acts:  (1) the United States,

7    having failed to update its records, "negligently sent Maria's notice [of the removal hearing]

8    to her old address" (see FAC ¶¶ 25, 85); (2) the United States "fail[ed] to take reasonable

9    measures to ascertain whether Maria had a stay of deportation before leaving her in

10   Mexico" (see Pls.' Opp. at 9:1-2; FAC ¶¶ 50, 58); (3) Maria was transported to Mexico in a

11   van without seatbelts (see FAC ¶¶ 56, 83); and (4) the van was driven in a manner

12   foreseeably causing injury to its occupants (see FAC ¶¶ 56-57, 83).

13        As discussed below, the Court finds the United States has shown the negligence

14   claim is subject to dismissal to the extent it is based on the first and second acts identified

15   above, but not to the extent the claim is based on the third and fourth acts identified above.

16        **1.  Mailing Notice to Incorrect Address**

17        The United States argues the claim, to the extent it is based on the notice having

18   been mailed to an incorrect address, is barred by § 1252(g), which, as discussed above,

19   bars claims based upon a decision to commence removal proceedings.  The Court agrees.

20        According to plaintiffs, the United States "set in motion a process whereby Maria's

21   case would be reviewed by an immigration judge" (see FAC ¶ 22), and, as part of such

22   process, mailed to an incorrect address notice of the hearing to be conducted by the IJ

23   (see FAC ¶¶ 24, 25).  The injuries allegedly caused thereby were a judicial determination

24   of Maria's removability in absentia and her subsequent detention and removal.  (See FAC

25   ¶¶ 27, 42, 58.)  In light of such allegations, the Court finds the claim is one "arising from"

26   the decision to commence removal proceedings, see 8 U.S.C. § 1252(g), and, accordingly,

27   is subject to dismissal for lack of subject matter jurisdiction.

28   //

1

**2.  Failure to Ascertain Whether Order of Removal Stayed**

2

    The United States argues the claim, to the extent it is based on the government's

3

having removed Maria without taking sufficient steps to determine if the order of removal

4

had been stayed, is barred by § 1252(g).  The Court agrees.

5

    The claim challenges the procedures employed when the government decided to

6

execute the removal order.   Consequently, the claim "aris[es] from" the decision to execute

7

the removal order, <u>see</u> 8 U.S.C. § 1252(g), and, accordingly, is subject to dismissal for lack

8

of subject matter jurisdiction.

9

**3.  Lack of Seatbelts**

10

    The United States argues the claim, to the extent it is based on the transport of

11

Maria without seatbelts, is barred by § 1252(g) and by the "discretionary function" exception

12

to the FTCA.  The Court disagrees.  As discussed above, claims alleging "mistreatment

13

while in detention" are not barred by § 1252(g).  <u>See</u> <u>Humphries</u>, 164 F.3d at 944.  Further,

14

the Court cannot conclude from the factual allegations in the FAC that any decision to

15

transport Maria in a vehicle without seatbelts was a decision "based on considerations of

16

public policy."  <u>See</u> <u>Terbush</u>, 516 F.3d at 1129.

17

    In its reply, the United States also argues California law does not require seatbelts in

18

"vehicles like buses and transport vans" (<u>see</u> Def.'s Reply at 7:21-23), and, consequently,

19

that plaintiffs fail to state a negligence claim based on the lack of seatbelts.[5]  The Court

20

finds such argument premature.  The California Vehicle Code requires seatbelts in any

21

"passenger vehicle," <u>see</u> Cal. Veh. Code §§ 27315(a), (c)(1), which is defined as "any

22

motor vehicle other than a motortruck, truck tractor or bus," <u>see</u> Cal. Veh. Code § 465; a

23

"bus," in turn, is defined as a vehicle "designed, used or maintained for carrying more than

24

15 persons including the driver," or, when "used by any nonprofit organization or group," a

25

26

27

28

    [5]Under the FTCA, the "United States waives sovereign immunity under circumstances where local law would make a private person liable in tort."  <u>See</u> <u>United States v. Olson</u>, 546 U.S. 43, 44-45 (2005) (internal quotations and emphasis omitted) (considering, in context of FTCA claim based on conduct occurring in Arizona, whether "Arizona law would impose liability upon a private person in similar circumstances").

1  "vehicle designed, used or maintained for carrying more than 10 persons, including the

2  driver," see Cal. Veh. Code §§ 233(a), 233(b).  Plaintiffs allege the subject vehicle was a

3  "van" that transported four detainees, a driver, and another officer (see FAC ¶¶ 55, 56), and

4  the Court cannot conclude from those allegations or any other allegations in the FAC that

5  such vehicle was a "bus" as defined in the California Vehicle Code.

6      Accordingly, to the extent the negligence claim is based on a lack of seatbelts, the

7  claim is not subject to dismissal at the pleading stage.

8      **4.  Manner of Driving**

9      The United States argues the claim, to the extent it is based on the manner in which

10  the van was driven, is barred by the discretionary function exception to the FTCA.  The

11  Court disagrees.  As discussed above with respect to plaintiffs' assault and battery claims,

12  the Court cannot conclude from the factual allegations in the FAC that any decision to drive

13  in the above-described manner constitutes a decision "based on considerations of public

14  policy."  See Terbush, 516 F.3d at 1129.

15      In its reply, the United States also argues the claim is subject to dismissal for the

16  asserted reason that the alleged conduct does not constitute a violation of the California

17  Vehicle Code.  Even assuming the alleged manner in which the van was driven would not

18  constitute a statutory violation, such circumstance would not bar a negligence claim, as a

19  statutory violation is not a necessary element thereof.  While "proof of [a] defendant's

20  violation of a statutory standard of conduct raises a presumption of negligence that may be

21  rebutted only by evidence establishing a justification or excuse for the statutory violation,"

22  see Ramirez v. Plough, Inc., 6 Cal. 4th 539, 547 (1993), "[i]n most cases, courts have fixed

23  no standard of care for tort liability more precise than that of a reasonably prudent person

24  under like circumstances," see id. at 546.  Here, assuming the facts in the FAC are true,

25  specifically, that the driver of the van accelerated and then slammed on the brakes, without

26  a perceptible need to do so and with knowledge that the passengers lacked the ordinary

27  means of stabilizing themselves, the Court finds plaintiffs have sufficiently identified

28  conduct that a reasonably prudent person under like circumstances would not have taken.

1    Accordingly, to the extent the negligence claim is based on the manner in which the

2    van was driven, the claim is not subject to dismissal at the pleading stage.

3    **D.  Seventh Claim for Relief (Negligent Misrepresentation)**

4    In their opposition, plaintiffs concede their claim for negligent misrepresentation is

5    subject to dismissal.  (See Pls.' Opp. at 2:3-4.)

6    **E.  Eighth Claim for Relief (Intentional Infliction of Emotional Distress)**

7    In their opposition, plaintiffs concede their claim for intentional infliction of emotional

8    distress is subject to dismissal, but request leave to amend to allege a claim for "negligent

9    infliction of emotional distress."  (See Pls.' Opp. at 2:7-9.)

10   Under California law, "there is no independent tort of negligent infliction of emotional

11   distress."  See Potter v. Firestone Tire & Rubber Co., 6 Cal. 4th 965, 984 (1993).  Rather,

12   "[t]he tort is negligence, a cause of action in which a duty to the plaintiff is an essential

13   element."  See id.  Here, plaintiffs have alleged a negligence claim, specifically, the Fourth

14   Claim for Relief.  Consequently, leave to amend to add a claim for "negligent infliction of

15   emotional distress" will not be afforded, as such new claim would be duplicative of the

16   existing Fourth Claim for Relief, and, accordingly, futile.  See Gordon v. City of Oakland,

17   627 F.3d 1092, 1094, 1096 (9th Cir. 2010) (affirming denial of motion for leave to amend,

18   where proposed claim "would be futile").

19   **F.  Ninth Claim for Relief (Violation of California Constitution)**

20   In their opposition, plaintiffs concede their claim alleging violations of the California

21   Constitution is subject to dismissal.  (See Pls.' Opp. at 2:3-4.)

22   **G.  Dismissal of Doe Defendants from FTCA Causes of Action**

23   In each cause of action alleged against the United States, plaintiffs seek relief as

24   against the United States pursuant to the FTCA.  In addition to naming the United States as

25   a defendant to the FTCA causes of action, plaintiffs have additionally named "Does 1-100."

26   (See, e.g., FAC at 11:13-19 (alleging assault claim against United States and "Does 1-

27   100").)  The United States argues the "Doe" defendants should be dismissed from the

28   FTCA causes of action, specifically, the First, Second, Third, Fourth, Seventh, Eighth, and

1   Ninth Claims for Relief.  The Court agrees.

2          Because "the United States is the only proper party defendant in an FTCA action."

3   Kennedy v. United States Postal Service, 145 F.3d 1077, 1078 (9th Cir. 1998), Does 1-100

4   will be dismissed as defendants from the FTCA claims, see id. (affirming dismissal of FTCA

5   claims against "person and entity" other than United States).

6                                        **CONCLUSION**

7          For the reasons stated above, the United States' motion to dismiss is hereby

8   GRANTED in part and DENIED in part, as follows:

9          1.  As to the First, Seventh, Eighth, and Ninth Claims for Relief, the motion is

10  GRANTED.

11         2.  As to the Second and Third Claims for Relief, the motion is GRANTED to the

12  extent such claims are based on fingerprinting, and DENIED to the extent such claims are

13  based on tightening of handcuffs and manner of driving.

14         3.  As to the Fourth Claim for Relief, the motion is GRANTED to the extent such

15  claim is based on the mailing error and failure to ascertain if the removal order was stayed,

16  and DENIED to the extent such claim is based on the lack of seatbelts and manner of

17  driving.

18         4.  To the extent the motion seeks dismissal of Does 1-100 from the First, Second,

19  Third, Fourth, Seventh, Eighth, and Ninth Claims for Relief, the motion is GRANTED.

20         5.  The Court will afford plaintiffs leave to file a Second Amended Complaint for the

21  limited purpose of amending the Second and Third Claims for Relief to the extent said

22  claims are based on the manner in which Maria was fingerprinted.  Any Second Amended

23  Complaint shall be filed no later than September 20, 2013.[6]  If plaintiffs do not elect to file a

24  //

25  //

26  _____

27         [6]Should plaintiffs elect to file a Second Amended Complaint, plaintiffs may not add
    new claims or new parties, or amend existing claims other than their claims based on the
28  manner of fingerprinting, without first seeking and obtaining leave of court.  See Fed. R.
    Civ. P. 15(a)(2).

1   Second Amended Complaint, the instant action will proceed on the remaining claims in the

2   FAC.

3         **IT IS SO ORDERED.**

4

5   Dated:  August 29, 2013

6                                           MAXINE M. CHESNEY
                                            United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12